UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CRIMINAL NO. 5:24-CR-6-KKC-MAS

UNITED STATES OF AMERICA, PLAINTIFF,

v. **OPINION AND ORDER**

STEVEN TILDEN FELLMY, DEFENDANT.

\* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendant Steven Tilden Fellmy's motion to suppress. (DE 13.) The defendant argued that: (1) the police lacked probable cause in removing him from his vehicle; and (2) the canine sniff search violated his Fourth Amendment rights. The Court held a hearing on this matter before the parties on November 25, 2024. For the following reasons, the Court will deny the defendant's motion to suppress.

**I.    Background**

On August 8, 2023, Deputy Michael Raisor ("Raisor") of the Mercer County Sheriff's Office was informed of an anonymous tip that the defendant was driving in the vicinity with a large quantity of narcotics. Raisor initiated a traffic stop of the defendant's vehicle after observing that the vehicle had an improperly illuminated license plate and had made an illegal lane change. Officer Isaac Shelton ("Shelton") of the Harrodsburg Police Department and K9 Tyra arrived on the scene approximately one minute later.

Shelton advised Raisor to have the defendant step out of his vehicle so that Shelton and Tyra could perform a free-air sniff. After the defendant stepped out of the vehicle, Shelton observed Tyra show a change in behavior before officially starting the sniff. He began the sniff by having Tyra move towards the driver side window. Notably, the defendant had left his

1

windows rolled down. Shelton then tapped at the upper portion of the driver side door to have Tyra sniff at a higher position. In doing so, Tyra's front paws and snout briefly entered the threshold of the defendant's vehicle. Shelton and Tyra repeated this method when they reached the rear passenger side door. It was at this point that Tyra alerted Shelton to the presence of narcotics within the defendant's vehicle. The defendant was subsequently arrested, and narcotics were found in the rear passenger side's floorboard and on his person.

## II. Analysis

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. In a motion to suppress evidence, the proponent has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. *United States v. Evers*, 669 F.3d 645, 651 (6th Cir. 2012).

The defendant moves to suppress as evidence the seized narcotics, claiming that he was unlawfully removed from his vehicle and that the sniff violated his Fourth Amendment protections. The Court will analyze each argument in turn.

### A.    Removal from the Vehicle

The Fourth Amendment's prohibition against unreasonable searches and seizures "extend[s] to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Chandler,* 437 Fed.Appx. 420, 425 (6th Cir. 2011) (quoting *United States v. Luqman,* 522 F.3d 613, 616 (6th Cir.2008)). "A traffic stop is reasonable under the Fourth Amendment where the stop was both proper at its inception and 'reasonably related in scope to the circumstances ... [that] justified the ... [stop] in the first place.'" *United States v. Garrido–Santana,* 360 F.3d 565, 570–71 (6th Cir. 2004) (quoting *United States v. Freeman,* 209

2

F.3d 464, 466 (6th Cir. 2000)). An officer is permitted to make an investigative stop when he has "probable cause to believe a civil traffic violation has occurred." *See Gaddis ex rel. Gaddis v. Redford Tp.,* 364 F.3d 763, 771 n. 6 (6th Cir.2004) (citing *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Davis,* 430 F.3d 345, 352 (6th Cir. 2005) (citing *United States v. Bradshaw,* 102 F.3d 204, 210 (6th Cir. 1996)).

This Court has previously explained that "[o]fficers conducting a traffic stop have the unequivocal right to order both the driver and any passengers out of the car regardless of whether they suspect criminal activity beyond the initial traffic violation." *United States v. Flores*, 30 F.Supp.3d 599, 603 (E.D. Ky. July 2, 2014) (citing *Arizona v. Johnson*, 555 U.S. 323, 330-31 (2009)). At the hearing on the motion to suppress, the defendant pushed back on whether his license plate was unilluminated at the time of the traffic stop. Yet Raisor testified that he noticed that the defendant's license plate was not properly illuminated—and that violation, in conjunction with the defendant's failure to use his turn signal when changing lanes, was the reason that Raisor initiated the traffic stop. Regardless of Raisor's knowledge of the anonymous tip on the defendant's drug trafficking, he was entitled to have the defendant step out of his vehicle because he committed traffic violations.

This right to order a driver out of their vehicle is justified in part by officer safety. *Johnson*, 555 U.S. at 331 ("The government's 'legitimate and weighty' interest in officer safety, the Court said, outweighs the '*de minimis*' additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle."). But the defendant argues that officer safety is not a justification here because the defendant's vehicle was pulled off to the side of the road, there were multiple law enforcement officers on the scene, and the removal only happened to allow Shelton and Tyra to conduct a sniff on the defendant's vehicle.

3

The Court finds that the interest in officer safety outweighs the *de minimis* additional intrusion of requiring the defendant to exit his vehicle after a lawful traffic stop. Raisor testified that he initiated the traffic stop only after observing the defendant commit two traffic violations, for which citations were issued. That alone, under the *Flores* line of case law, would justify removing the defendant from his vehicle. Moreover, Raisor initiated this traffic stop at night and near surrounding traffic. Raisor also had knowledge that the defendant was potentially involved in drug trafficking. He testified that these factors as well as his training and protocols informed his decision to order the defendant out of his vehicle. Notably, the defendant did not suggest in his briefing or at the hearing that Raisor unlawfully prolonged the traffic stop in any meaningful way.

Regardless of whether the officers' intent was to conduct a sniff on the defendant's vehicle, ordering the defendant to step out of his vehicle was a minimal intrusion on the defendant and in the interest of the officers on the scene—as well as the defendant himself. Accordingly, the Court finds that the defendant was not unlawfully removed from his vehicle following the traffic stop.

### B.    Free-Air Sniff

The defendant's argument against the lawfulness of the sniff conducted on the defendant vehicle is two-fold: (1) that the defendant's Fourth Amendment rights were violated when Tyra stuck her snout through the defendant's open windows; and (2) that Tyra's intrusion into and touching of the defendant's vehicle violated his property rights.

"[A] trained canine's sniff inside of a car after instinctively jumping into the car is not a search that violates the Fourth Amendment as long as the police did not encourage or facilitate the dog's jump." *United States v. Sharp*, 689 F.3d 616, 620 (6th Cir. 2012). "A dog sniff from inside of a vehicle becomes a search that violates the Fourth Amendment when 'the officers themselves opened the door' and '*facilitate[d]* a dog sniff of the [vehicle's] interior.'" *Id.* at 619

4

(citing *United States v. Winningham*, 140 F.3d 1328, 1331 (10th Cir. 1998)). However, the federal circuits are consistent in holding that "a dog's instinctive jump into a car" does not violate the Fourth Amendment. *Id.*

Here, the defendant argues that Shelton "clearly instructed" Tyra to jump onto the vehicle's open windows and put her paws "within the exterior and then its head and nose." (DE 13-1 at 8.) In other words, the defendant argues that Tyra's actions were *not* an instinctive jump or action that would not be violative of the Fourth Amendment, but a response to a specific command which was meant to facilitate the dog's intrusion into the defendant's vehicle. The evidence presented at the hearing, however, does not support such a conclusion.

Shelton did not pat the interior of the car or command Tyra to jump through the window; he patted the bottom of the window so that Tyra would sniff from a higher position. To do exactly that, Tyra propped herself up using the side of the door and followed the odor of narcotics from inside the vehicle. She followed the odor and, in doing so, passed her snout through the open window. Any dog would have done the same.

The Court is still unconvinced that the sniff at issue constituted an invasion of the vehicle's interior as considered in the *Sharp* case. Shelton's body camera footage showed that Tyra's snout partially passed the side of the window while following the odor of narcotics. At most, Tyra's snout passed the threshold—not her entire head or body. And even if the Court found that this action constituted an invasion, the instant matter is more analogous to an instinctive jump rather than an invasion that violates the Fourth Amendment.

In fact, the officers testified that they would not want one of their dogs to enter anyone's vehicle for safety concerns. Shelton further testified that patting the car door and getting Tyra to smell from a higher position was not out of the ordinary, and that Tyra had not given false positive hits before. The officers did not encourage or facilitate Tyra to "jump" into the car. She was simply commanded to prop herself up to sniff from a higher position, and any intrusion

5

into the vehicle—if any at all—was instinctive and the result of Tyra following the odor of narcotics found within the vehicle. Accordingly, the sniff conducted by Shelton and Tyra did not violate the defendant's Fourth Amendment protections.

### C. K9 Unit Training

In the defendant's reply and at the hearing on the motion to suppress, he called into question Tyra's qualifications and training to perform as a narcotics detection K9 unit. His argument primarily consisted of pointing out the lack of official documentation presented by the Government and taking issue with Tyra's shorter stature. He posited that a dog that could not get a proper sniff could not serve as a qualified K9 unit. The evidence, however, shows that Tyra was properly trained.

While the certificates of training were not offered into evidence, there was ample testimony about the training program that Shelton and Tyra undertook both before and after they began working together. Further, the testimony showed that Tyra has been a reliable K9 unit when it comes to the detection of narcotics. Shelton even testified that he was not aware of any instance where Tyra had hit on narcotics when none were present. Accordingly, the Court finds that Tyra was properly trained to conduct sniff searches.

## III. Conclusion

For the aforementioned reasons, the Court hereby ORDERS as follows:

1.  the defendant's motion to suppress (DE 13) is DENIED; and

2.  trial in this matter is set for January 21, 2025, at 9:00 a.m. in the United States District Court in Lexington, Kentucky. It is further ordered that counsel and all parties shall be present at 8:30 a.m.

This 9th day of December, 2024.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY